## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**M. CHRISTINA MONTOYA**,

Plaintiff,

vs.                                        No.    **CIV 02-0985 MCA/LCS (ACE)**

**VOICESTREAM PCS II
CORPORATION**,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's ***Motion to Reset Matter for Civil Non-Jury Trial*** [Doc. No. 16] filed on October 31, 2002, Defendant's ***Motion for Summary Judgment*** [Doc. No. 33] filed on February 14, 2003, and the ***Stipulated Motion to Extend Time for Filing Replies in Support of Motions for Summary Judgment*** [Doc. No. 37] filed on March 20, 2003.  Having considered the pleadings and exhibits of record, the relevant law, and otherwise being fully advised in the premises, the Court finds that grounds exist for granting the stipulated motion and denying both of Defendant's motions as explained below.

## I.    BACKGROUND

On June 25, 2002, Plaintiff M. Christina Montoya, acting *pro se*, filed this civil action in the Second Judicial District Court of the State of New Mexico alleging that Defendant

Voicestream PCS II Corporation terminated her employment in violation of the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Defendant removed the action to this Court on August 8, 2002. [Doc. No. 1.] On September 23, 2002, Plaintiff's counsel entered his appearance. [Doc. No. 7.] An initial scheduling conference was held before Magistrate Judge Smith on October 1, 2002. [Doc. No. 11.] The parties submitted their proposed Amended Initial Pretrial Report (AIPTR) to Magistrate Judge Smith, who forwarded it to this Court. The AIPTR was filed on October 25, 2002. [Doc. No. 14.]

The proposed AIPTR submitted by the parties identified this case as a "jury case" but also contained exceptions in which Defendant asserted that this is not a jury case because Plaintiff did not file a timely jury demand. The trial date on the AIPTR (which is filled in by the Court) [Doc. No. 14], and a subsequent notice filed on October 29, 2002 [Doc. No. 15], indicate that this matter is set for a jury trial. Defendant filed its *Motion to Reset Matter for Civil Non-Jury Trial* on October 31, 2002. [Doc. No. 16.]

On February 14, 2003, Defendant also filed a motion for summary judgment. [Doc. No. 33.] The undisputed facts and evidence of record relating to Defendant's summary-judgment motion can be summarized in the light most favorable to Plaintiff as follows.

Defendant employed Plaintiff as a part-time Retail Sales Associate from August 4, 1999, until July 3, 2001. Plaintiff's job duties included selling wireless telephone services and equipment to the general public at stores in New Mexico that are owned and operated by Defendant. (Montoya Aff. ¶ 1; Moya Aff. ¶¶ 6, 7; AIPTR at 2.)

On September 4, 2000, while working in one of Defendant's stores in Albuquerque, New Mexico, Plaintiff received a written warning indicating that she did not meet her sales quota for the month of August 2000.  (Ex. F. to Pltf.'s Resp.)  After receiving that warning, Plaintiff and Defendant set up an "action plan," and Plaintiff transferred to Defendant's store in Santa Fe, New Mexico.  Plaintiff resumed her sales duties at that location and had no more problems meeting her sales quota until November 2000.  (Montoya Aff. ¶¶ 2-3; Montoya Dep. at 59-60; Ex. 3 to Deft.'s Mem. at 2.)  Plaintiff had problems meeting her sales quota for the months of November 2000, December 2000, and January 2001, yet Defendant continued to employ her at its Santa Fe store.  (Montoya Dep. at 46, 62; Montoya Aff. ¶ 4.)

In January 2001, Plaintiff signed a written acknowledgment form indicating that she received and understood Defendant's "Minimum Expectation Policy Effective:  January 1, 2001."  That policy reads as follows:

1.     This policy is applicable to all Voicestream Wireless field sales personnel who are covered under the Voicestream Wireless Sales Compensation Policy, and will take effect beginning the first day of the calendar month following their original hire date.  For example, a Retail Sales Representative (RSR) hired on February 10th will be subject to the terms and conditions of this minimum expectation policy on March 1st.

2.     All personnel assigned a sales quota will be expected to maintain a Minimum Expectation of 80% of such quota per month for at least 4 out of 6 months in any consecutive 6 month period.  Failure to meet such expectations will result in termination of employment.  Based on quota assignment, the 80% target will be rounded up or down to the nearest whole number.  (See rounding policy in the policy and procedure section.)

Example:  An RSR with a quote of 40 gross activation's would need to attain a minimum of 80% (32 gross activations) for 4 out of 6 month in any

consecutive 6 month period in order to be in compliance with minimum expectation.

3.      For definition, assignment, and calculation of sales activation quota, this policy defers to the Voicestream Wireless Sales Compensation Policy.

4.      Consideration will be given for approved leaves of absence or other extraordinary circumstances that may inhibit attainment of quota.   The Executive Director of Sales and Human Resources must approve any exceptions.  If an employee is on an approved leave quota will be adjusted solely for the purposes of achieving minimum expectation.

This policy is <u>not</u> intended to create, nor does it create a contract, either express or implied, nor can or should any employee treat any provisions of this policy as a promise.   The Company reserves the right to add, modify, terminate or make exceptions to this policy at any time, at its sole discretion. The provisions set forth in this policy do not alter the "at will" status of the employee, nor do they alter or affect the Employment at Will statement as set forth on page two of the employee handbook.  Therefore, the company may terminate any employee at is discretion pursuant to each employee's at will status, not withstanding the employee's sales performance.

(Ex. 2 to Deft.'s Mem.)[1]

Toward the end of February 2001, Defendant terminated the employment of the Retail Sales Manager at its Santa Fe store, and the Santa Fe store operated without a permanent Retail Sales Manager until Defendant hired Carlos Moya as the Santa Fe store's Retail Sales Manager on or about May 7, 2001.  During the period when the Santa Fe store was operating without a Retail Sales Manager, Plaintiff was not told what, if any, sales quota was assigned to her, what the minimum expectation of 80% of the quota was, or whether she was meeting Defendant's expectation in that regard.

---

[1]The "Voicestream Wireless Sales Compensation Policy" that is referenced in the "Minimum Expectation Policy Effective:  January 1, 2001," is not part of the record in this case at this time.

Her own efforts to obtain that information during this period were unsuccessful. Plaintiff claims that the various supervisory personnel who attended the Santa Fe store on a temporary basis during this period told her that they did not know what quotas applied, and Plaintiff was under the impression that the quotas would be modified to reflect the fact that the Santa Fe store was open for business during fewer hours of the day than other stores. According to Plaintiff, she did not have computerized personal access to her quotas and plan activation data on Defendants' Automated Commission Report (ACS) during this period, because Defendant's computers did not work consistently and the activation numbers contained in the ACS did not accurately reflect whether she met her quota. Plaintiff further claims that the numbers reported on the ACS did not correspond to the number of activation contracts in her file. Finally, Plaintiff claims that when she contacted Rachel Brock (a regional Administrative Assistant employed by Defendant) to inquire about whether she was on the "hot list" for termination during the period when the Santa Fe store was without a manager, Ms. Brock replied that Plaintiff was not on the termination "hot list" and that she should not worry about quota. (Montoya Dep. at 62-70; Ex. 3 to Deft.'s Mem. at 2; Montoya Aff. ¶¶ 6, 7, 12, 13, 14; Moya Dep. at 58, 90-93; Thomas Dep. at 78-79; Carlson Aff. 3-24-03, at 1.) For these reasons, Plaintiff did not know whether she met a sales quota for the months of February 2001, March 2001, April 2001, or May 2001. (Montoya Dep. at 62-65; Ex. 3 to Deft.'s Mem. at 2; Montoya Aff. ¶¶ 5, 10.)

Plaintiff took a leave of absence for two weeks during May 2001. (Montoya Dep. at 83.) On June 19, 2001, Plaintiff informed Carlos Moya, the recently appointed Retail Sales

Manager of Defendants' Santa Fe store, that she was pregnant. (Montoya Aff. ¶ 8; Moya Dep. at 93.) With the approval of his supervisor, Mr. Moya terminated Plaintiff's employment on July 3, 2001, on the grounds that she did not meet Defendant's "Minimum Expectation Policy." Mr. Moya believed that the policy required him to terminate Plaintiff's employment and that he had no authority to modify or change this requirement. According to Mr. Moya, Plaintiff was provided "quota relief" for the months of March 2001, April 2001, and May 2001, but she did not comply with Defendant's "Minimum Expectation Policy" during the six-month period between January and June 2001 because she did not meet her sales quota in January 2001, February 2001, or June 2001. (Moya Dep. at 99-100; Moya Aff. ¶¶ 12, 13, 14; Thomas Dep. at 90-93; Montoya Aff. ¶ 9.)

Plaintiff alleges that another, similarly situated employee was discharged by Defendant because of her pregnancy, while non-pregnant employees were not discharged even though they did not meet their sales quotas. (Montoya Aff. ¶¶ 15, 16; Ex. 3 to Deft.'s Mem. at 3.) Defendant denies these allegations pertaining to other employees. (Carlson Aff. 2-14-03 ¶¶ 3, 4; Ex. 4 to Deft.'s Mem. at 3-4.)

II.   **ANALYSIS**

A.   **Standard of Review**

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that

a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if it might affect the outcome of the case. See id. at 248. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Where circumstantial evidence is the basis for a claim of employment discrimination brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e to 2000e-17 (1994 & West Supp. 2002), the burden of proof at the summary-judgment stage is determined according to the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Amro v. Boeing Co., 232 F.3d 790, 796 (10th Cir. 2000). This framework specifically applies to claims brought under the Pregnancy Discrimination Act. See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191 (10th Cir. 2000).

Under this framework, the employee must establish a prima facie case of unlawful discrimination in order to survive a motion for summary judgment. If the employee establishes a prima facie case, then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision that is alleged to be unlawful. If the employer meets this burden, then summary judgment is warranted unless the employee can show that there is a genuine issue of material fact as to whether the reasons proferred by the employer are pretextual or whether his race, age, gender, or other illegal consideration (in this case pregnancy) was a determinative factor in the employment

decision.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-49 (2000);

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

A plaintiff in an employment discrimination case can show pretext by presenting

evidence that the reasons proferred by the employer are so weak, implausible, inconsistent,

incoherent, or contradictory as to support a reasonable inference that the employer did not

act for those reasons.  See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).  In

particular, such pretext may be shown by evidence concerning the "prior treatment of

plaintiff; the employer's policy and practice regarding minority employment (including

statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring

criteria); and the use of subjective criteria."  Simms v. Okla. ex rel. Dep't of Mental Health

& Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).  Pretext also may be

shown:

> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false; (2) with evidence that the defendant acted
> contrary to a written company policy prescribing the action to be taken by the
> defendant under the circumstances; or (3) with evidence that the defendant
> acted contrary to an unwritten policy or contrary to company practice when
> making the adverse employment decision affecting the plaintiff.

Kendrick, 220 F.3d at 1230 (citations omitted).

## B.    Plaintiff's Employment Discrimination Claim

To establish a prima facie case of employment discrimination based on her pregnancy,

Plaintiff must show that "(1) she is within the protected class; (2) she was doing satisfactory

work, (3) she was discharged, and (4) her position remained open and was ultimately filled

-8-

by a nonpregnant employee." Atchley v. The Nordam Group, Inc., 180 F.3d 1143, 1148 (10th Cir. 1999); see Horizon/CMS Healthcare Corp., 220 F.3d at 1192 (similar). For purposes of its summary-judgment motion, Defendant does not dispute that Plaintiff has made such a prima facie showing in this case. (Deft.'s Mem. at 8.)

Defendant asserts, however, that there is a legitimate, facially nondiscriminatory business reason for its decision to terminate Plaintiff's employment, namely that she did not meet her sales quota for at least two of the previous six months of her employment as stated in Defendant's "Minimum Expectation Policy." Applying the McDonnell Douglas framework to Defendant's summary-judgment motion, the Court determines that Defendant has met its burden of production with regard to this assertion. See Kendrick, 220 F.3d at 1229-30; Atchley, 180 F.3d at 1148.

Consequently, the dispositive issue in this case is whether Plaintiff has shown one or more genuine issues of material fact concerning whether the reason preferred by Defendant is pretextual. See Reeves, 530 U.S. at 147-49; Kendrick, 220 F.3d at 1226. The Court determines that Plaintiff has met this burden for the purpose of defeating Defendant's summary-judgment motion.

When viewed in the light most favorable to Plaintiff, the evidence of record and undisputed facts could support a reasonable inference that Defendant did not uniformly enforce the sales quota stated in its "Minimum Expectation Policy" at its Santa Fe store, and that Defendant instead selectively applied the quota as a pretext for discharging Plaintiff on the basis of her pregnancy. Under this view of the evidence, a jury might find it significant

that before Plaintiff informed Defendant of her pregnancy, Defendant had responded to deficiencies in Plaintiff's sales performance by issuing a written warning, setting up an "action plan" to correct the deficiencies, and providing "quota relief."  Within two weeks of the date on which Defendant was first informed of Plaintiff's pregnancy, however, Defendant changed its position and decided that the quota stated in the "Minimum Expectation Policy" must be rigidly enforced so as to require the immediate termination of Plaintiff's employment.

Considering the evidence in the light most favorable to Plaintiff, a jury also might reasonably perceive a discrepancy between the rigid view of the "Minimum Expectation Policy" expressed in the deposition testimony of the store manager, Mr. Moya, and the actual language contained in the "Minimum Expectation Policy Acknowledgement Form" signed by Plaintiff.  This form provides, in relevant part, that:  "the Minimum Sales Expectation Policy, as well as any other policies or guidelines, may be modified or terminated at any time, orally or in writing, with or without notice at the sole discretion of Voicestream Wireless Corporation."  (Ex. 2 to Deft.'s Mem.)  The policy itself further states that:  "This policy is _not_ intended to create, nor does it create a contract, either express or implied, nor can or should any employee treat any provisions of this policy as a promise."  (Id.)  Combined with the other evidence submitted with the parties' briefs, the discrepancy between the level of discretion implied by these disclaimers and the more rigid interpretation of the policy expressed by Mr. Moya at his deposition raises a disputed factual issue

-10-

concerning whether the reason for Defendant's decision to terminate Plaintiff's employment was pretextual.

There is also a disputed factual question as to when Defendant's "Minimum Expectation Policy" applied to Plaintiff. The written policy states that the minimum sales expectation of 80% applies to "[a]ll personnel assigned a sales quota." (Id.) Plaintiff has presented evidence which may support a reasonable inference that she was *not* assigned a sales quota during a significant portion of the six-month period between January 2001 and June 2001 because there was no manager at the Santa Fe store to assign such a quota, and none of the other supervisory personnel with whom Plaintiff spoke would tell her what quota, if any, applied to her. Further, Defendant admitted that Plaintiff was provided "quota relief" for a three-month period in 2001. Considered with the other evidence in the light most favorable to Plaintiff, this admission may provide further support for the view that Defendant did not apply the "Minimum Expectation Policy" uniformly and had considerable leeway to manipulate the policy for reasons unrelated to an individual employee's sales performance.

The Tenth Circuit has explained that an employee may show that an adverse employment action is pretextual using evidence of the "prior treatment of plaintiff, . . . disturbing procedural irregularities, . . . the use of subjective criteria," Simms, 165 F.3d at 1328, and action that is "contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances," Kendrick, 220 F.3d at 1230 (citation omitted). Considering these factors, Plaintiff has met her burden of showing a disputed issue

of material fact concerning the issue of pretext in this case.  Therefore, Defendant's *Motion for Summary Judgment* must be denied.

### C.     Plaintiff's Jury Demand

Having denied Defendant's summary-judgment motion, the Court must next determine whether Plaintiff is entitled to a jury trial in this action.  As noted in Defendant's *Motion to Reset Matter for Civil Non-Jury Trial* [Doc. No. 16], the record reflects that Plaintiff never filed a jury demand pursuant to Rule 1-038 NMRA 2002 while this action was pending in state court, nor did she file a jury demand pursuant to Fed. R. Civ. P. 38 after the action was removed to this Court on August 8, 2002.  In response to Defendant's motion, Plaintiff points out that she was proceeding *pro se* in this matter until Plaintiff's counsel entered his appearance on September 23, 2002, [Doc. No. 1, 7] and that Plaintiff's counsel raised the issue of a jury trial shortly thereafter in the context of submitting the parties' proposed AIPTR to Magistrate Judge Smith for the initial scheduling conference.  [Doc. No. 11, 14.]  In the AIPTR filed on October 25, 2002, and in a notice filed four days later,  this Court notified the parties that this matter was set for a jury trial.  [Doc. No. 14, 15.]

Under Fed. R. Civ. P. 39(b), "the court in its discretion upon motion may order a trial by a jury of any or all issues" even when neither party has made a proper jury demand under Fed. R. Civ. P. 38.  The Tenth Circuit has consistently held that a jury trial should be granted under this rule "'in the absence of strong and compelling reasons to the contrary.'"  AMF Turboscope, Inc.  v. Cunningham, 352 F.2d 150, 155 (10th Cir. 1965) (quoting Swofford v. B & W, Inc., 336 F.2d 406, 409 (5th Cir. 1964)); accord Green Constr. Co. v. Kan. Power

& Light Co., 1 F.3d 1005, 1011 (10th Cir. 1993). Underlying this holding is the recognition that the decision whether to try a case before a jury is not merely a technicality; rather, this decision implicates a fundamental constitutional right. See U.S. Const. amend. VII; Fed. R. Civ. P. 38(a).

This action does not present strong and compelling reasons for denying Plaintiff the opportunity to try her case before a jury. While the better procedure is for a party to demand a jury trial under the framework set forth in Fed. R. Civ. P. 38, the Court finds that the framework for submitting an initial pretrial report and conducting an initial scheduling conference under Fed. R. Civ. P. 16 also provided an appropriate avenue for making such a demand under the circumstances of this case. In particular, the Court notes that Plaintiff's request for a jury trial was made in the early stages of the litigation within days after Plaintiff's counsel entered his appearance and before any significant pretrial deadlines had been imposed. Thus, Defendant was not unfairly prejudiced by the timing of Plaintiff's request for a jury trial or the manner in which it was raised. For these reasons, the Court denies Defendant's *Motion to Reset Matter for Civil Non-Jury Trial*.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that there exist one or more genuine issues of material fact which preclude summary judgment in Defendant's favor, and that Plaintiff is entitled to a jury trial.

**IT IS, THEREFORE, ORDERED** that Defendant's ***Motion for Summary Judgment*** [Doc. No. 33] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Motion to Reset Matter for Civil Non-Jury Trial* [Doc. No. 16] is **DENIED**.

**IT IS FURTHER ORDERED** that the *Stipulated Motion to Extend Time for Filing Replies in Support of Motions for Summary Judgment* [Doc. No. 37] until March 24, 2003, is **GRANTED**, and Defendant's reply brief is accepted as timely filed.

**SO ORDERED**, this 23rd day of June, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge